**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 13-106-DLB-CJS**

**LESLIE D. MARTIN**                                                                    **PLAINTIFF**

vs.                          <u>**MEMORANDUM OPINION AND ORDER**</u>

**MATTHEW R. BROWNING and**                                              **DEFENDANTS**
**U.S. XPRESS, INC.**

*******************

## I.      Introduction

        This civil action arises from a traffic collision that occurred on southbound Interstate

75 near Exit 182 in Boone County, Kentucky.  Defendant Matthew Browning was driving

a tractor-trailer for Defendant U.S. Xpress, Inc. ("USX"), when he side-swiped Plaintiff

Leslie Martin's sedan, causing her to lose control of her vehicle.  Martin filed suit against

Browning and USX, alleging that Browning was negligent in operating the tractor-trailer and

that USX was vicariously liable for his negligence.  Additionally, Martin asserted claims for

negligent hiring, training, supervision, entrustment, and retention against USX.  Although

Browning and USX have stipulated to liability, they urge the Court to grant partial summary

judgment on Martin's claim for punitive damages, reasoning that there is no evidence of

gross negligence in this case.  USX also asks the Court to grant summary judgment on

Martin's negligent hiring, training, supervision, entrustment, and retention claims, which

USX views as redundant, given its stipulation of vicarious liability for Browning's

1

negligence.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## II.   Factual and Procedural Background

On April 11, 2013, Martin was driving her 2003 Toyota Camry in the far right lane of southbound I-75 near Exit 182 in Boone County, Kentucky.  (Docs. # 1 at 3, ¶ 9; 74-3 at 2-3; 76-1 at 1).  Browning was driving a tractor-trailer for his employer, USX, in the lane to Martin's immediate left.  (*Id.*).  Traffic was relatively heavy because the evening rush hour was underway.  (*Id.*).  As Browning attempted to merge into the right lane, the back of the trailer hit the front of Martin's Camry, causing her car to spin out of control.  (*Id.*).  She testified that her vehicle "kept getting sucked in and . . . multiple times hit up against his trailer."  (Doc. # 74-3 at 3).  She further stated that she somehow ended up at the front of the tractor-trailer, which hit the back end of her car and spun her out in front of it.  (*Id.*).  The front of the tractor-trailer then hit her driver's side door, causing her to spin out again, then finally come to a stop.[1]  (*Id.*).

Deputies from the Boone County Sheriff's Office arrived at the accident scene around 5:30 p.m.  (Doc. # 76-1 at 1).  Browning explained to the deputies that he did not see Martin's vehicle in his mirror or camera.  (*Id.* at 2).  He believed that she was driving in his blind spot at the time of the accident.  (*Id.*).  The accident report cites "driver inattention" as the cause of the accident.  (*Id.* at 1).  Neither party was cited for reckless driving.  (*Id.*).  Martin received emergency medical attention on the scene, but did not require hospitalization.  (Doc. # 74-3 at 4).

---

1) Martin's expert, Neil Gilreath, also indicated that Martin's Camry was hit multiple times, due to the damage he observed on various parts of the vehicle.  (Doc. # 76-2 at 2-3).  The accident report prepared by the Boone County Sheriff's Office offers a simpler version of events.  It describes the accident as a "sideswipe collision," simply stating that "Operator unit 2 said she was in lane 4 when unit 3 changed lanes into her striking her vehicle on the left side, and spun her and struck her again."  (Doc. # 76-1 at 2).

USX hired Browning in December of 2012.  (Docs. # 74-7; 78-1 at 1).  Although Browning had graduated from commercial driving school, he had only four months of over-the-road experience at that time.[2]  (*Id.*).  One of the former employers listed on his application indicated that he was ineligible for rehire.  (*Id.*).  USX personnel attempted to contact that company, but never heard from them.  (Doc. # 78-1 at 1).  USX was able to verify his employment through other means, but never found out why he was ineligible for rehire with his former employer.  (*Id.*).  Upon hiring, Browning underwent three days of orientation with USX and passed a road test administered by another USX driver.[3]  (*Id.* at 3-4).  Browning was also seen by a DOT medical examiner, who certified him to drive for two years.[4]  (Docs. # 74-4 at 2; 74-4 at 5).

## III.   Analysis

### 1.   Applicable Law

Federal courts sitting in diversity apply federal procedural law.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  The substantive law of the forum state governs the claims asserted.  *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938); *Moore v. Coffey*, 992 F.2d 1439 (6th Cir. 1993); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).  Accordingly,

---

2) USX's corporate representative, David Tomshack, explained that drivers with less than three months of over-the-road experience are hired as "students" and must complete a student training program.  (Doc. # 78-1 at 1).  If the applicant has three months or more of experience, he or she is hired as a "first seat driver," meaning that they may drive unaccompanied.  (*Id.* at 3).

3) Several of USX's drivers are certified to be road testers and perform these tests in addition to their normal duties.  (Doc. # 78-1 at 4).

4) The Federal Motor Carrier Safety Administration ("FMCSA") imposes physical fitness requirements on drivers who operate commercial vehicles.  (Doc. # 74-6 at 4).  Accordingly, drivers must submit to a medical examination.  (*Id.*).  Medical examiners then certify that these drivers fall into one of three categories: (1) medically fit to drive for two years; (2) medically fit to drive with periodic monitoring every three months, six months or year; or (3) disqualified due to a given condition.  (*Id.*).  USX relied on these reports in determining whether their employees were medically fit to operate commercial vehicles.  (Doc. # 74-4 at 2).

3

the Court will evaluate Browning and USX's Motion in accordance with the Federal Rules of Civil Procedure and apply substantive Kentucky law to Martin's negligence-based claims.

### 2. *Standard of Review*

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If there is a dispute over facts that might affect the outcome of the case under governing law, then entry of summary judgment is precluded.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the ultimate burden of persuading the court that there are no disputed material facts and that he is entitled to judgment as a matter of law.  *Id.*  Once a party files a properly supported motion for summary judgment by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 250.  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Id.* at 252.

### 3. *Negligent Hiring, Training, Supervision, Entrustment, and Retention Claims Against USX*

Vicarious liability claims involve the imposition of strict liability on an employer by virtue of its relationship to an employee.  *Brooks*, 283 S.W.3d at 734.  Negligent hiring or retention claims, by contrast, "focus[ ] on the direct negligence of the employer which permitted an otherwise avoidable circumstance to occur."  *Id.*; *see also Turner v. Pendennis Club*, 19 S.W.3d 117, 121 (Ky. Ct. App. 2000) (recognizing the existence of

4

negligent training and supervision claims).  However, "[i]n order for an employer to be held liable for negligent hiring or retention . . . the employee must have committed a tort."  *Id.* at 727 (explaining further that the underlying tort may be intentional or negligent).

Martin seeks to hold USX vicariously liable for Browning's negligence in operating the tractor-trailer and directly liable for its own negligence.  (Doc. # 1).  USX argues that Martin's negligent hiring, training, supervision, entrustment, and retention claims should not survive because it has already conceded vicarious liability for Browning's negligence.[5]  To support this proposition, USX relies heavily on *Meherg v. Pope*, Civ. A. No. 1:10-CV-00185-M, 2013 WL 5934143, at *16 (W.D. Ky. Nov. 5, 2013).  In that case, the court had only to determine the appropriate amount of compensatory damages, as it had already granted summary judgment on the issue of punitive damages.  *Id*.  After noting that "Kentucky courts have not directly addressed whether negligent training and supervision claims survive in light of an admission of respondeat superior liability," the court made an *Erie* guess that Kentucky courts would apply the majority "preemption rule," reasoning as follows:

> Once an employer defendant has admitted liability to plaintiff for its employee's negligence, the evidence laboriously submitted to establish the other theory of liability serves no purpose.  The energy and time of courts and litigants is unnecessarily expanded.  In addition, potentially inflammatory evidence comes into the record which is irrelevant to any contested issue in the case.  Once vicarious liability for negligence is admitted under respondeat superior, the person to whom the negligence is imputed becomes strictly liable to the third party for damages attributable to the conduct of the person from whom negligence is imputed.

---

5) USX's argument proceeds on the assumption that punitive damages are not contested in this case.  That assumption happens to be correct because, as the Court will explain below, USX is entitled to summary judgment on the issue of punitive damages.  However, the absence of punitive damages is not dispositive of this issue.

*Id.* (citing *Oaks v. Wiley Sanders Truck Lines, Inc.*, 2008 WL 5459136, at *1 (E.D. Ky. Nov. 10, 2008)).  The court then granted summary judgment on the plaintiff's negligent hiring claims.  *Id.*

In response, Martin insists that *Meherg* has been effectively overruled by *Allgeier v. MV Transp., Inc.*, 433 S.W.324, 334 (Ky. 2014), a Kentucky Supreme Court case decided the following year.  In *Allgeier*, the Kentucky Supreme Court addressed "whether a separate negligent hiring claim should go forward when an employer concedes its liability for the negligent acts of its employee under the doctrine of *respondeat superior*."  *Id.*  The court ultimately adopted the "non-preemption" rule:

> [B]ecause Kentucky law has recognized that a distinction exists between the vicarious liability of an employer and the actual liability of that employer; because the preemption rule would conflict with our civil rules and case authorities permitting alternative, and even conflicting, claims; because of the procedural flaws inherent in the preemption rule; and because the non-preemption rule comports more closely with our tort law traditions; we hold that a plaintiff may assert and pursue in the same action a claim against an employer based under *respondeat superior* upon the agent's negligence, and a separate claim based upon the employer's own direct negligence in hiring, retention, supervision, or training.  The employer's admission to the existence of an agency relationship from which vicarious liability may arise does not supplant the claim that the employer's own negligence, independent of the negligence of the employee, may have caused or contributed to the injury.

*Id.* at 337.

USX attempts to limit *Allgeier*'s holding, arguing that it only "allow[s] alternative pleading and theories of recovery when liability for damages is still in dispute." (Doc. # 78 at 7).  Although the Kentucky Supreme Court noted that some jurisdictions "allow[ ] a plaintiff to assert both theories of liability *if* a valid claim for punitive damages is presented," and such a claim was presented in *Allgeier*, the opinion does not evince any intent to limit

6

its holding. *Allgeier*, 324 S.W.3d at 334. Rather, it explicitly adopted the "non-preemption rule," thus allowing Martin's negligent hiring, training, supervision, entrustment, and retention claims to survive. USX is not entitled to summary judgment on these claims.

### 4.    *Punitive Damages Claim Against Browning and USX*

Under Kentucky law, punitive damages are available if the plaintiff can prove by clear and convincing evidence that the defendant acted with oppression, fraud, or malice.[6] Ky. Rev. Stat. Ann. § 411.184(2). Punitive damages may also be awarded upon a showing of gross negligence. *Williams v. Wilson*, 972 S.W.2d 260, 262-65 (Ky. 1998). "[T]he prevailing understanding defines gross negligence as a wanton or reckless disregard for the safety of other persons." *Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. Ct. App. 2003). "It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation." *Id.*

In *Kinney*, the Kentucky Court of Appeals held that "traveling at a possible speed of ten miles per hour in excess of the posted speed limit and failing to complete a pass before entering a no-passing zone constitute nothing more than ordinary negligence." *Id.* The court reasoned as follows:

> Were we to accept Kinney's argument that [this conduct] amounts to wanton or reckless disregard for the safety of others, it would effectively eliminate the distinction between ordinary negligence and gross negligence in the context of automobile accidents. Nearly all auto accidents are the result of negligent

---

6) Although the Kentucky Supreme Court held KRS § 411.184(1)(c) unconstitutional in *Williams v. Wilson*, it expressed "no opinion herein as to the constitutionality of KRS § 411.184(2)." *Williams*, 972 S.W.2d at 268. "In subsequent decisions, the Kentucky Supreme Court has reiterated that KRS § 411.184(1)(c) is unconstitutional, but has applied other sections of the statute, specifically, KRS § 411.184(2)." *Anderson v. Wade*, 33 F. App'x 750, 758-59 (6th Cir. 2002) (surveying Kentucky case law). Therefore, the Court will follow the lead of the Sixth Circuit and the Kentucky Supreme Court and apply KRS § 411.184(2).

> conduct, though few are sufficiently reckless as to amount to gross negligence, authorizing punitive damages.  We are of the opinion that punitive damages should be reserved for truly gross negligence as seen in cases such as *Shortridge v. Rice*, *Stewart v. Estate of Cooper*, and *Phelps v. Louisville Water Company.*  In *Shortridge* and *Stewart*, the defendant tortfeasors were driving while intoxicated; and, in *Phelps*, the jury was presented with eighteen instances where Louisville Water Co. misrepresented the dangerous nature of a highway condition, violated its own safety policies, and disregarded the Manual on Uniform Traffic Control Devices, all of which evidenced a conscious disregard for public safety.

*Id.*

Martin argues that Browning's failure to detect changing traffic conditions, spot her vehicle in his mirror or on his camera, honk his horn, or take evasive action qualifies as gross negligence.  (Doc. # 76 at 3-4).  She also complains that Browning "changed lanes abruptly and swerved into his blind spot on a crowded interstate." (*Id.*).  However, there is no evidence to suggest that he made these decisions with a wanton and reckless disregard for the safety of other persons.  Stated simply, Browning's conduct is akin to the ordinary negligence at issue in *Kinney*, rather than the gross negligence discussed in *Shortridge*, *Stewart,* and *Phelps*.

Nevertheless, Martin believes that these acts and omissions, considered together, are sufficient to support an award of punitive damages.  (*Id.*).  Martin cites *Allgeier* for the proposition that "[e]ven where a single act of negligence might not constitute gross negligence, gross negligence may result from the several acts."  *Allgeier*, 433 S.W.3d at 338 (quoting *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 388 (Ky. 1985)).  However, *Allgeier* presented an unusual and much more egregious set of facts than this case. *Id.*

In *Allgeier*, a handicapped passenger's wheelchair tipped over as she was

8

attempting to disembark from a paratransit bus. *Id.* at 328. Because the wheelchair was connected to the vehicle by a safety strap, and because the passenger was wearing a safety belt, she was essentially suspended in mid-air. *Id.* The bus driver released the passenger's safety belt, causing her to fall to the ground and fracture both femurs. *Id.* Instead of calling 911, the driver called her company's dispatcher, who sent two supervisors to the accident scene. *Id.* Upon arrival, these supervisors sought emergency medical assistance, but minimized the urgency of the situation by telling first responders that the passenger was only experiencing back pain. *Id.* They then "busied themselves with taking pictures and sequestering [the passenger] from any inquiries about the incident," paying "little attention to [her] plight." *Id.*

The Kentucky Supreme Court relied heavily on these facts in determining that an award of punitive damages was warranted, reasoning as follows:

> From the evidence a jury could have reasonably concluded that in the aftermath of [the driver's] initial ordinary negligence that caused Allgeier to fall, MV agents, including [the driver], following policies put in place by MV, placed its own financial self-interests ahead of Allgeier's urgent need for medical assistance, and callously left Allgeier suffering helplessly in dire pain and distress in subfreezing weather for an unnecessarily prolonged period of time.

*Id.*

Even considered *in toto*, Browning's acts and omissions do not constitute gross negligence. There is simply no indication that Browning did anything more than make poor driving choices that resulted in a collision. This is not a situation like *Allgeier*, where the defendants failed to seek emergency care for a fellow human being in severe pain for the sake of financial self-preservation. Accordingly, Browning is entitled to summary judgment

9

on Martin's punitive damages claim.

Under Kentucky law, punitive damages cannot be assessed "against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question." Ky. Rev. Stat. Ann. § 411.184(3); *see also Berrier v. Bizer*, 57 S.W.3d 271, 283 (Ky. 2001) (noting that "Kentucky is the only state with a statute that so broadly limits vicarious liability for punitive damages"). Because the Court has already found that Browning's actions do not rise to the level of gross negligence, USX cannot be liable for punitive damages on a vicarious liability theory. *See, e.g., Jones v. Blankenship*, Civ. An. No. 6:06-109, 2007 WL 3400115, at *3 (E.D. Ky. Nov. 13, 2007) (explaining that a plaintiff must prove that the employee was grossly negligent and that the employer authorized, ratified or should have anticipated the employee's gross negligence).

As a final matter, Martin has expressed an intent to seek punitive damages against USX in connection with its alleged negligence in hiring, training, supervising, entrusting, and retaining Browning. (Doc. # 76 at 5-6). Martin complains that USX hired Browning when he had only four months of over-the-road experience, knowing that he was ineligible for rehire with his previous employer. (*Id.*). As further evidence of USX's lack of interest in Browning's personal and employment history, Martin notes that Browning listed the wrong birth year on his application twice and no one from USX noticed. (*Id.*). Martin also asserts that USX allowed Browning to be medically certified for two years, when he should

have only been certified for one.[7]  (*Id.*).

USX counters that these alleged failings do not rise to the level of gross negligence. Having reviewed the record and the above-cited case law, the Court agrees.  Martin has failed to present more than a scintilla of evidence that USX recklessly disregarded the safety of others in hiring, training, supervising, entrusting, and retaining Browning as a driver.  Therefore, USX is also entitled to summary judgment on Martin's punitive damages claim.

## IV.     Conclusion

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. # 74) be, and is, hereby **GRANTED** as to Plaintiff's punitive damages claims and **DENIED** as to Plaintiff's negligent hiring, training, supervision, entrustment, and retention claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Hearing (Doc. # 76) be, and is, hereby **DENIED AS MOOT**.

This 27th day of June, 2016.



Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\Opinions\Covington\2013\13-106 Opinion Granting in Pt and Denying in Pt MSJ.wpd

---

7) The FMCSA indicates that drivers with blood pressure in excess of 140/90 may be certified to drive, subject to periodic monitoring.  (Doc. # 74-6).  Drivers whose blood pressure is less than 140/90 may be certified for two years.  (*Id.*).  The Medical Examination Report indicates that Browning's blood pressure reading was 132/90.  (Doc. # 74-5).  Although Browning's systolic reading was less than 140, Martin suggests that he should only have been certified for one year because his diastolic reading was right at 90.  (Doc. # 76 at 5-6).